**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **Intellectual Ventures II LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:15-CV-59-JRG** |
| | § | |
| **Bitco General Insurance Corp., f/k/a,** | § | **JURY TRIAL DEMANDED** |
| **Bituminous Casualty Corp.; and** | § | |
| **Bitco National Insurance Co., f/k/a** | § | |
| **Bituminous Fire and Marine Insurance Co.,** | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFF INTELLECTUAL VENTURES II LLC'S RESPONSE TO**
**THE BITCO DEFENDANTS' AMENDED MOTION TO TRANSFER VENUE**
**TO THE CENTRAL DISTRICT OF ILLINOIS [DKT. NO. 34]**

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND ....................................................................................................2

III.   LEGAL STANDARDS .........................................................................................3

IV.   ARGUMENT .........................................................................................................4

      A.    Private Interest Factors ..............................................................................5

            1.    Relative ease of access to sources of proof...................................5

            2.    Availability of compulsory process to secure attendance
                 of witnesses..................................................................................7

            3.    Cost of attendance for willing witnesses .....................................8

            4.    All other practical problems that make trial of a case easy,
                 expeditious, and inexpensive ......................................................11

      B.    Public Interest Factors............................................................................14

V.    CONCLUSION....................................................................................................15

CERTIFICATE OF SERVICE .......................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Azure Networks, LLC v. CSR PLC*
        Civ. No. 6:11-CV-139, 2012 U.S. Dist. LEXIS 114497 (E.D. Tex. June 25, 2012)........15

*ColorQuick, LLC v. Vistaprint Ltd.*
        Civ. No. 6:09-CV-323, 2010 U.S. Dist. LEXIS 136226 (E.D. Tex. Jul. 22, 2010),
        *aff'd*, 628 F.3d 1342 (Fed. Cir. 2010) ......................................................................12, 13

*Continental Grain Co. v. The FBL-585*
        364 U.S. 19 (1960)..........................................................................................................11

*Convergence Tech. (USA), LLC v. Microloops Corp.*
        711 F. Supp. 2d 626 (E.D. Va. 2010) ............................................................................12

*DataTreasury Corp. v. Capital One Fin. Corp., et al.*
        Civ. No. 6:11-CV-092-JDL, 2012 U.S. Dist. LEXIS 114453
        (E.D. Tex. Jan. 30, 2012)........................................................................................10, 14

*Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*
        Civ. No. 6:11-CV-34, slip. op. at 5 (E.D. Tex. Apr. 19, 2012) ........................................7

*Emmanuel v. SPX Corp.*
        Civ. No. 6:09-CV-220, 2009 U.S. Dist. LEXIS 86094 (E.D. Tex. Sept. 21, 2009) ...........8

*Eolas Techs., Inc. v. Adobe Sys., Inc., et al.*
        Civ. No. 6:09-CV-446-LED, Dkt. No. 424 (E.D. Tex. Sept. 28, 2010) ............................4

*Gulf Oil Corp. v. Gilbert*
        330 U.S. 501 (1947)..........................................................................................................4

*Hanby v. Shell Oil Co.*
        144 F. Supp. 2d 673 (E.D. Tex. 2001) ..............................................................................3

*In re D-Link Corp.*
        183 Fed. Appx. 967 (Fed. Cir. 2006) ................................................................................6

*In re Google*
        412 Fed. Appx. 295 (Fed. Cir. 2011)...............................................................................11

*In re Hoffmann-La Roche Inc.*
        587 F.3d 1333 (Fed. Cir. 2009)........................................................................................7

*In re Vistaprint Ltd.*

628 F.3d 1342 (Fed. Cir. 2010)......................................................................11

*In re Volkswagen AG*
371 F.3d 201 (5th Cir. 2004) ...................................................................3, 4

*In re Volkswagen of America, Inc.*
545 F.3d 304 (5th Cir. 2008) (en banc) .........................................................3

*In re Volkswagen of America, Inc.*
566 F.3d 1349 (Fed. Cir. 2009)....................................................................11

*In re Zimmer Holdings, Inc.*
609 F.3d 1371 (Fed. Cir. 2010)...............................................................11, 12

*J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*
Civ. No. 6:08-CV-211, 2009 U.S. Dist. LEXIS 13210 (E.D. Tex. Feb. 20, 2009) ............5

*Lodsys v. Brother Int'l Corp.*
Civ. No. 2:11-CV-90-JRG, 2013 U.S. Dist. LEXIS 51336 (E.D. Tex. Jan. 14, 2013) .....11

*Lonestar Inventions L.P. v. Sony Elecs., Inc.*
Civ. No. 6:10-CV-588-LED-JDL, 2011 U.S. Dist. LEXIS 96828
(E.D. Tex. Aug. 29, 2011) .........................................................................5

*Mohamed v. Mazda Motor Corp.*
90 F. Supp. 2d 757 (E.D. Tex. 2000) ............................................................8

*Music City Coach, Inc. v. Star City Coach Works, Ltd.*
Civ. No. 3:10-cv-00115, 2010 U.S. Dist. LEXIS 32917 (M.D. Tenn. April 2, 2010) ........9

*Mymail, Ltd. v. Am. Online, Inc.*
233 F.R.D. 455 (E.D. Tex. 2004).................................................................10

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*
433 F. Supp. 2d 795 (E.D. Tex. 2006)............................................................6

*Nuvotronics, LLC v. Luxtera, Inc.*
Civ. No. 7:13-CV-478, 2014 U.S. Dist. LEXIS 46169 (E.D. Va. Apr. 1, 2014)...............8

*Odom v. Microsoft*
596 F. Supp. 2d 995 (E.D. Tex. 2009) ............................................................6

*Smith v. Kyphon*
578 F. Supp. 2d 954 (M.D. Tenn. 2008).........................................................9

*Sonix Tech. Co. v. VTech Elecs. N. Am., LLC*
2010 U.S. Dist. LEXIS 130414 (E.D. Tex. Dec. 9, 2010)................................7

---

*Sybase, Inc. v. Versata Sys., Inc.*
  Civ. No. 6:08-CV-024, 2008 U.S. Dist. LEXIS 44860 (E.D. Tex. June 9, 2008).........6, 10

*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*
  796 F.2d 821 (5th Cir. 1986) ...........................................................................................4

*Texas Data Co., LLC v. Target Brands, Inc.*
  771 F. Supp. 2d 630 (E.D. Tex. 2011)..............................................................................7

*Thomas Swan & Co. v. Finisar Corp., et al.*
  Civ. No. 2:13-CV-178-JRG, Dkt. No. 102 (E.D. Tex. Jan. 6, 2014)...........................8, 10

*TiVo Inc. v. Verizon Comm'cns, Inc.*
  Civ. No. 2:09-CV-257, 2010 U.S. Dist. LEXIS 112320 (E.D. Tex. Sept. 17, 2010) ........12

*Van Dusen v. Barrack*
  376 U.S. 612 (1964)..........................................................................................................3

*VirtualAgility, Inc. v. Salesforce.com, Inc., et al.*
  Civ. No. 2:13-CV-11, 2014 U.S. Dist. LEXIS 12015 (E.D. Tex. Jan. 31, 2014)...............8

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*
  402 F. Supp. 2d 731 (E.D. Tex. 2005) ............................................................................12

## <u>Rules</u>

28 U.S.C. § 1404 ....................................................................................................................3

35 U.S.C. § 102 ....................................................................................................................12

35 U.S.C. § 103 ....................................................................................................................12

Fed. R. Civ. P. 45 ..................................................................................................................8

## I.      INTRODUCTION

COMES NOW Plaintiff Intellectual Ventures II LLC ("Intellectual Ventures" or "Plaintiff") and files this its Response to Defendants Bitco General Insurance Corp. and Bitco National Insurance Co.'s (collectively, "Bitco" or "Defendant") Amended Motion to Transfer Venue to the Central District of Illinois (Dkt. No. 34) ("Amended Motion"). Bitco filed its Amended Motion following Intellectual Ventures' filing of its First Amended Complaint (Dkt. No. 24). Most of Bitco's Amended Motion is identical in substance to, and often a verbatim duplication of, its Motion to Transfer Venue (Dkt. No. 14) ("Original Motion"). However, Bitco does take the opportunity to attempt to address arguments in Intellectual Ventures' response to Bitco's Original Motion. Bitco's arguments, old and new, are addressed below.

Bitco's Amended Motion focuses *only* on issues related to infringement—ignoring potential witnesses and evidence regarding validity and damages, as well as the overwhelming convenience that will result from litigating this case and the related case, *Intellectual Ventures II LLC v. Great West Casualty Co.*, Civ. No. 6:15-CV-060 (filed Jan. 20, 2015) ("the Great West case"),[1] which involve the exact same patent claims, in the same venue. Even in its arguments related to infringement, Bitco mischaracterizes the scope of Intellectual Ventures' allegations, ignoring important evidence and witness testimony likely to come from Texas and from this District. In doing so, Bitco ignores the near certainty that common issues of law and fact will pervade both cases pending before this Court that involve the Patents-in-Suit. But Courts in this District have mandated that *all potential relevant witnesses* must be considered in the transfer

---

[1] As discussed herein, Great West and Bitco (collectively, "Defendants") are commonly owned under the Old Republic corporate umbrella. They share counsel and have submitted near-identical motions to transfer, but seek transfers to different venues. Intellectual Ventures notes for the Court's convenience that this Response and the Response to the Great West Motion share much in common.

analysis. By ignoring issues and focusing only on the alleged inconvenience to itself, Bitco has failed to carry its burden to show that the Central District of Illinois is a "clearly more convenient" venue in which to litigate this case. Accordingly, this Court should deny Bitco's Amended Motion to Transfer.

## II.     BACKGROUND

In this patent infringement case, Intellectual Ventures accuses Bitco of infringing U.S. Patent No. 7,516,177, titled "Apparatus for distributing content objects to a personalized access point of a user over a network-based environment and method", and U.S. Patent No. 8,929,555, titled "Data encryption systems and methods" (collectively, "Patents-in-Suit"). Bitco's infringing activities include making and using systems used to implement the portal website accessed via http://www.bitco.com and http://portal.bitco.com, and the website accessed via https://www.bitco.com. *See* Dkt. No. 24, ¶¶ 22, 26. Bitco provides insurance services throughout the United States, including in Texas. Bitco maintains two branch offices in Texas, and maintains consistent and ongoing relationships with its customers and agents, including those in Texas and within this District. *See id.* at ¶¶ 18–19. Bitco's Answer acknowledges its ties to this District. *See, e.g.*, Dkt. No. 19, ¶¶ 6, 16–17.

There are currently two cases pending before this Court involving allegations of infringement of the Patents-in-Suit—this case and the Great West case. Bitco is a member of the "Old Republic Group" of insurance companies. *See* Dkt. No. 24, ¶ 17; Dkt. No. 19, ¶ 15. Importantly, the defendants in the Great West case are also part of the Old Republic Group. *See* Civ. No. 6:15-CV-60, Dkt. No. 23, ¶ 16; Dkt. No. 18, ¶ 14. Thus, not only do the two pending cases involve infringement of the same claims of the same patents, they also involve commonly owned defendants represented by the same counsel defending infringement allegations regarding

substantially similar instrumentalities. It is beyond question that common issues of law and fact will pervade these two cases, yet Defendants instead want to split them up and litigate in different venues, all but guaranteeing duplicate discovery of common third parties and drastically increasing the risk of inconsistent rulings from different courts on the same issues. The Court has already consolidated this case and the Great West case for discovery purposes. *See* Dkt. No. 33.

### III.   LEGAL STANDARDS

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) include preventing wasted time, energy, and money, and protecting litigants, witnesses, and the public against unnecessary inconvenience and expense. *See, e.g.*, *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). A district court retains ultimate discretion whether to transfer venue pursuant to § 1404(a), but the court must exercise its sound discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)

("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.* But "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *E.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *quoted in Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986) ("Once the Court has determined that an adequate, available forum exists, the next step is to proceed to a balancing of the public and private interest factors, bearing always in mind that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'").

## IV.    ARGUMENT

Bitco has failed to show that it is entitled to a transfer of this case from this District to the Central District of Illinois. All of Bitco's arguments focus on the locations of its own witnesses, considerations of issues of infringement, and the alleged inconvenience to itself. But Courts in this District have made clear that "[a]ll potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial." *Eolas Techs., Inc. v. Adobe Sys., Inc., et al.*, Civ. No. 6:09-CV-446-LED, Dkt. No. 424 (E.D. Tex. Sept. 28, 2010). Bitco ignores the convenience of the witnesses and evidence in this case that weighs against transfer—including its agents and customers in or near this District whose evidence and testimony will be relevant to infringement and damages issues. Notably, according to a declaration attached to Bitco's Motion, its agents and customers are third party witnesses. *See* Dkt. No. 34-1, ¶ 7. Thus, they are *more* relevant to the venue analysis than Bitco's direct employees. As such, Bitco cannot satisfy

its burden of showing that the Central District of Illinois is "clearly more convenient."

### A.    Private Interest Factors

#### 1.    Relative ease of access to sources of proof

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Lonestar Inventions, L.P. v. Sony Elecs. Inc.*, Civ. No. 6:10-CV-588-LED-JDL, 2011 U.S. Dist. LEXIS 96828, at *6 (E.D. Tex. Aug. 29, 2011). To meet its burden, Bitco must identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Protus IP Solutions, Inc.*, Civ. No. 6:08-CV-211, 2009 U.S. Dist. LEXIS 13210, at *2 (E.D. Tex. Feb. 20, 2009).

Bitco's presence in Texas is substantial.  Bitco maintains two branch offices in Texas. *See* Cutler Decl., Exh. 2; Dkt. No. 34-1, ¶ 6. And Bitco has twenty agents located in this District. *See* Dkt. No. 34-1, ¶ 7. Given that Intellectual Ventures' infringement allegations are directed toward Bitco's online system, its agents' and customers' interaction with that system will necessarily be implicated in this case. It stands to reason, then, that important evidence may come from its branch offices—including the two maintained in Texas—and its agents and customers in this District. Bitco argues that it has customers and agents throughout the United States, such that "access to generalized evidence regarding use of the Bitco websites from these parties isn't particularly or conveniently tied to Texas . . . ." Dkt. No. 34 at 10. But that assertion is contradicted by the testimony of Bitco's own declarant, Craig Mowry.

According to Mr. Mowry, Texas is the only state with multiple offices, and the Irving office is Bitco's largest branch office by number of employees and second largest office by Bitco's own size metric, premiums sold. Cutler, Decl., Exh. 9, Mowry Depo. at 59:5–7, 58:3–16, 60:16–20. By this same metric, Texas is more central to Bitco's operations than Illinois, the state

to which Defendant seeks to transfer this case. *Id.* at 59:15-60:11. Indeed, Bitco's website lists 51 insurance agencies located within 100 miles of Tyler, Texas, but only 14 within 100 miles of Rock Island, Illinois. *See* Cutler Decl., Exh. 3, 4. And Bitco has identified at least twenty agencies (which it alleges are third parties) located in this District. *See* Dkt. No. 34-1, ¶ 7. Thus, the location of customers and agents is not a neutral factor, as Bitco suggests—it weighs against transfer.

Bitco further argues that its documents and data centers are located only in its home forum of the Central District of Illinois. But documents relevant to this case are spread throughout the country, as Intellectual Ventures' documents are located in Washington and at the offices of its Texas-based litigation counsel. This District has found the burden of document production of minimal significance in litigation where the parties are disparately located. *See, e.g.*, *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006) (Davis, J.) (giving little weight to document production), *mandamus denied*, *In re D-Link Corp.*, 183 Fed. Appx. 967 (Fed. Cir. 2006); *Sybase, Inc. v. Vertica Sys., Inc.*, Civ. No. 6:08-CV-024, 2008 U.S. Dist. LEXIS 44860, at *5 (E.D. Tex. June 9, 2008); *see also Odom v. Microsoft*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. 2009) ("Because electronic information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone."). This Court should give little weight to arguments regarding the location of Bitco's documents because the parties are disparately located.

Finally, Bitco asserts that evidence of use of the websites is located in Illinois and that "the employees who work [in the Irving and San Antonio offices] weren't and aren't involved in the development or use of the Accused Websites." Dkt. No. 34 at 10. Yet Mr. Mowry directly

contradicts these assertions too. According to Mr. Mowry's deposition testimony, employees at both the Irving and San Antonio locations *do* use the accused websites. Cutler, Decl., Exh. 9, Mowry Depo. at 55:8–21, 61:17–19 (confirming that both Irving and San Antonio employees use the "portal website"). Accordingly, the Texas-based offices and witnesses are implicated, and their proximity to this District is an important consideration weighing against transfer.

### 2.   Availability of compulsory process to secure attendance of witnesses

Bitco has not identified or even suggested that there are any third-party witnesses who would be unwilling to testify in this case, much less identified them as resident exclusively in Illinois. This factor is therefore neutral. *See Sonix Tech. Co. v. VTech Elecs. N. Am., LLC*, 2010 U.S. Dist. LEXIS 130414, at *9 (E.D. Tex. Dec. 9, 2010) ("Neither party has indicated that there are any unwilling witnesses in this case, so the availability of compulsory process is not applicable here."). Even if Bitco had identified unwilling witnesses, this second factor favors transfer only when the majority of third-party witnesses are located in the transferee venue, or when the transferee forum has absolute subpoena power over witnesses. *Volkswagen II*, 545 F.3d at 316.[2] As the party seeking transfer, Bitco bears the burden of identifying *unwilling* third-party witnesses located in the Central District of Illinois who would benefit from the transfer. *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, Civ. No. 6:11-CV-34, slip op. at 5 (E.D. Tex. Apr. 19, 2012); *see also Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011).

As discussed above, the "majority of third-party witnesses" are not located in the transferee venue—in fact, a substantial portion of these likely witnesses are located in or around this District. *Supra* at III.A.1. Even if likely witness were not located here, courts in this District

---

[2] Absolute subpoena power is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

have noted, "even if this Court could not compel a witness's attendance, neither party is prevented from using the witness's videotaped deposition at trial." *Emmanuel v. SPX Corp.*, Civ. No. 6:09-CV-220, 2009 U.S. Dist. LEXIS 86094, at *19–20 (E.D. Tex. Sept. 21, 2009). And new Rule 45 permits any Court to compel the deposition testimony of third-party witnesses if the deposition occurs within 100 miles of the witness's residence or place of business. FED. R. CIV. P. 45. "The proper inquiry, under newly amended Rule 45, is then how much, if at all, Defendants might be inconvenienced by having to rely on depositions as opposed to live attendance at trial." *VirtualAgility, Inc. v. Salesforce.com, Inc., et al.*, Civ. No. 2:13-CV-11, 2014 U.S. Dist. LEXIS 12015, at *6 (E.D. Tex. Jan. 31, 2014). Bitco "fail[s] to explain how they would be inconvenienced by presenting only the non-party witnesses' deposition testimony at trial." *Id.* Thus, this factor does not support a transfer.[3]

### 3.    Cost of attendance for willing witnesses

The third factor, the cost of attendance for willing witnesses, weighs against transfer. "Although the court must consider the convenience of both the party and non-party witnesses, 'it is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight in a transfer of venue analysis.'" *Thomas Swan & Co. v. Finisar Corp., et al.*, Civ. No. 2:13-CV-178-JRG, Dkt. No. 102, at 8 (E.D. Tex. Jan. 6, 2014) (citing *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000)). Bitco alleges that Illinois would be more convenient for Bitco because it is closer to Bitco's headquarters. But other Courts have stated that alleged inconvenience to party witnesses is given less weight because party witnesses are presumed willing to travel to another forum. *See, e.g.*, *Nuvotronics, LLC v. Luxtera, Inc.*, Civ.

---

[3] Bitco states that Intellectual Ventures makes the "simply wrong" assertion that Bitco's customers and insurance agents could be compelled to testify in Texas but not in Illinois. Dkt. No. 34 at 11. While Intellectual Ventures did not actually make such an argument, it is clear that more potential third-party witnesses are located near this District than in Illinois.

No. 7:13-CV-478, 2014 U.S. Dist. LEXIS 46169, at *16 (E.D. Va. Apr. 1, 2014); *Music City Coach, Inc. v. Star City Coach Works, Ltd.*, 2010 U.S. Dist. LEXIS 32917, at *33 (M.D. Tenn. April 2, 2010) ("[W]hile the convenience of all parties and potential witnesses is important, courts typically focus on convenience issues surrounding non-party witnesses, because it is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not."); *Smith v. Kyphon*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008) ("Because these witnesses are employees who can be compelled to testify on behalf of their employer, their convenience is of lesser relevance."). Here, Bitco's contention that trying this case in this District would be inconvenient for its employee witnesses should be given little weight.

Bitco cites the relative distances between the respective courthouses and the purported locations of *some* witnesses—particularly witnesses with alleged knowledge of the design of Bitco's web portal.[4] But Bitco's position that the only relevant witnesses and evidence are those associated with the creation and maintenance of the websites ignores the relevance of its agents' and customers' actual use of the systems—including use by agents and customers in Texas. Testimony from these witnesses—whom Bitco identifies as third parties—will be necessary in this case at least to explain the practical uses of the systems and establish the financial benefits to Bitco and its agents and customers. Potential witnesses whose testimony may be relevant at trial in this case include those listed in Exhibit 4 and referenced in Intellectual Ventures' First

---

[4] Bitco's motion relies heavily on the alleged role played by third party Silver Oaks Communications ("Silver Oaks") in developing Bitco's websites, as did its Original Motion. It should be noted, however, that neither Silver Oaks nor any of its identified witnessed played any part in developing *accused portal portion* of the website—a fact which became clear only after Mr. Mowry's deposition. *See* Dkt. No. 27 (Plaintiff's Supplemental Response to Defendant's Motion to Transfer Venue).

Amended Complaint (Dkt. No. 22) and Bitco's Answer (Dkt. No. 19), as well as the many other agents and customers who reside in the State of Texas. While Illinois may be more convenient for Bitco's own *party* witnesses, this District would be far more convenient for these *non-party* agents and customers.

Moreover, Bitco has alleged invalidity defenses and counterclaims that will necessarily involve assertions of prior art. *See* Dkt. No. 19, ¶ 29, Second Counterclaim ¶¶ 13–15. But Bitco does not account for the locations of potential prior art witnesses, whom Courts in this District have cited among the most "likely" witnesses at trial. *See, e.g.*, *DataTreasury*, Civ. No. 2012 U.S. Dist. LEXIS 144453, at *21 (likely witnesses include parties, inventors, and experts).[5] While Intellectual Ventures disagrees that those defenses have merit, there is no evidence about the locations of relevant witnesses to support these invalidity defenses—and certainly none sufficient to carry Bitco's burden to prove that the Central District of Illinois is a clearly more convenient forum for these witnesses.

Creating definite inconveniences for the Plaintiff and third parties to appease hypothetical inconveniences for the infringer is not sufficient grounds to transfer a case. Ultimately, moving this case from this District to the Central District of Illinois would simply shift inconveniences from some of the parties to the other parties and potential witnesses. *See Sybase*, 2008 U.S. Dist. LEXIS 44860, at *3 ("shifting of inconveniences does not support transfer") (citations omitted); *Thomas Swan & Co.*, Civ. No. 2:13-CV-178-JRG, Dkt. No. 102, at 6 ("Where a transfer will only shift the inconvenience from one district to another, the movant has not met its burden of persuasion."). This factor weighs against transfer.

---

[5] Bitco has not yet served its invalidity contentions and the parties have not yet designated experts. But, as the party with the burden of establishing its preferred venue as clearly more convenient, Bitco could have identified some potential witnesses for the Court to consider.

4.    **All other practical problems that make trial of a case easy, expeditious, and inexpensive**

Although judicial economy is not a specifically enumerated factor in the transfer analysis, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*"). The Court may deny Motions to Transfer Venue based solely on judicial economy.

> The Court may deny Motions to Transfer Venue based solely on judicial economy. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1345–47 (Fed. Cir. 2010) (holding that district court may properly deny § 1404(a) transfer based on judicial economy even "when all of the convenience factors clearly favor transfer"); *In re Google*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective").

*See Lodsys v. Brother Int'l Corp.*, Civ. No. 2:11-CV-90-JRG, 2013 U.S. Dist. LEXIS 51336, at *27–28, n.1 (E.D. Tex. Jan. 14, 2013).

A multiplicity of suits pending in a single district counsels against transfer to another forum, though the weight accorded to this factor varies depending on the particular circumstances of each case. *Compare Volkswagen III*, 566 F.3d at 1351 (denying mandamus of a ruling denying motion to transfer, noting the judicial efficiencies of litigating multiple lawsuits involving the same issues in a common forum), *with In re Zimmer Holdings, Inc.*, 609 F.3d 1371, 1381–82 (Fed. Cir. 2010) (granting transfer where two cases shared only one common patent and involved different products that would likely lead to "significantly different discovery, evidence, proceedings, and trial"). As the Supreme Court has held, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

The risk of inconsistent rulings and judgments from simultaneously pending cases in

different courts "may be greater on average than for many other types of cases owing chiefly to the large number of issues that typically arise in most patent cases, including, for example, infringement and willful infringement, various invalidity issues under 35 U.S.C. §§ 102, 103, inequitable conduct, laches, waiver, not to mention *Markman* claim term determinations, which, in the mine run of patent cases, are rarely fewer than ten and often many more." *Convergence Tech. (USA), LLC v. Microloops Corp.*, 711 F. Supp. 2d 626, 642–43 (E.D. Va. 2010); *see also Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (granting transfer in order to consolidate two cases where "the same patent is simultaneously being litigated" in part to avoid the "serious problems" created by the risk of inconsistent judgments); *Mymail, Ltd., v. Am. Online, Inc.*, 233 F.R.D. 455, 458 (E.D. Tex. 2004) ("[T]wo claim constructions risk inconsistency, create uncertainty regarding the patent's scope, and impede the administration of justice.").

The commonality of facts and circumstances between the two pending cases counsels against transfer of either action. *See TiVo Inc. v. Verizon Comm'ns, Inc.*, Civ. No. 2:09-CV-257, 2010 U.S. Dist. LEXIS 112320, at *35–37 (E.D. Tex. Sept. 17, 2010) (finding that overlap between cases was not negligible, as in *Zimmer*, since similar technology was accused in both suits and the same patents were asserted in each); *ColorQuick, LLC v. Vistaprint Ltd.*, Civ. No. 6:09-CV-323, 2010 U.S. Dist. LEXIS 136226, at *23–26 (E.D. Tex. Jul. 22, 2010), *aff'd*, 628 F.3d 1342 (Fed. Cir. 2010) (distinguishing *Zimmer* where a co-pending suit "involve[d] the same patent-in-suit, pertain[ed] to the same underlying technology, and accuse[d] similar . . . services"). Here, as noted above, Intellectual Ventures currently has two cases (this case and the Great West case) pending before this Court. Both cases involve allegations of infringement of the Patents-in-Suit against commonly owned defendants. The accused instrumentalities are

extremely similar, with the addition of the '555 accusing implementation and use of identical technology, Transport Layer Security Version 1.2, in the co-pending suits. *Compare* 6:15-cv-59, Dkt. No. 24 at ¶ 26, *with* 6:15-cv-60, Dkt. No. 23 at ¶ 24. Likewise, the Defendants' asserted defenses and counterclaims are virtually identical (as are their respective motions to transfer). And Defendants are represented by the same counsel and will likely serve joint invalidity contentions or at least substantially similar contentions. It is also quite likely that third-party witnesses such as inventors, prosecution counsel, and others will be common witnesses at depositions or at trial in both pending cases. As stated above, the Court to consolidated the two cases, which, in part, will lessen the burden on these third parties, who would otherwise have to endure multiple rounds of discovery in separate cases. Transferring Bitco and/or Great West away from this District would all but guarantee such a burden on third-party witnesses. Because of the commonality of facts and legal issues, it would be a waste of judicial resources, time, and money for these cases to be litigated separately.

Bitco disputes that adjudication in the Eastern District of Texas will be more efficient because the Court lacks specialized knowledge of the patents. Dkt. No. 34 at 13.  But Bitco conflates two distinct judicial economy inquiries: prior experience with the patent-in-suit and co-pendency of similar issues. *See ColorQuick*, 2010 LEXIS 136226, at *23–26 (separately analyzing the court's prior experience with the patent-in-suit and overlap between the co-pending cases). While familiarity with the Patents-in-Suit may be a neutral factor, as the Central District of Illinois has no more experience with them than this District, the substantial overlap between the related cases before this Court certainly weighs against a transfer.

Similarly, the number of defendants among the co-pending cases is of no matter. Where, as here, the asserted patents are the same, the cases "will likely have similar issues of claim

validity, claim construction, claim scope, discovery, evidence, proceedings, and trial"—all of which weigh against a transfer. *Id.* at *26. Because of the substantial overlap between the Great West and Bitco cases, which is even greater following the introduction of the '555 patent, judicial economy counsels against transferring the cases to different districts.

### B.    Public Interest Factors

All the public interest factors are either neutral or weigh against transfer. Although both Courts are presumably familiar with patent law, this Court is participating in the Patent Pilot Program, while the Central District of Illinois is not. *See* Cutler Decl., Exh. 5. This District has considered this fact, finding that it "slightly disfavors transfer." *See, e.g.*, *DataTreasury*, 2012 U.S. Dist. LEXIS 144453, at *21. Additionally, while this District has established Local Patent Rules, the Central District of Illinois has not.

The local presence of Bitco and its contacts within this District weighs against transfer. As described above—and as evidenced by the Texas Department of Insurance website—Bitco is licensed to sell insurance in the State of Texas. *See, e.g.*, Cutler Decl., Exhs. 6, 7. Bitco has branch offices in Texas and significant relationships with insurance agents and customers in this District. Bitco collected over $60 million in Texas premiums in 2012, over $70 million in 2013, and over $80 million in 2014—each year representing about 20% of Bitco's national premium collection. *See* Cutler Decl., Exhs. 6, 7. Thus, while it is interested in writing policies and collecting premiums from residents of this District, Bitco downplays this District's residents' interest in adjudicating this dispute while exaggerating that of Illinois residents. Additionally, in 2014, Bitco named six Texas agencies as "winning insurance agencies" at its Circle of Excellence Awards—including one (Davis Forestry Insurance Agency) in Lufkin, within this District. *See* Cutler Decl., Exh. 8. More awards went to Texas agencies than agencies in any

other state. *See id.* Thus, Bitco downplays this District's residents' interest in adjudicating this dispute while exaggerating that of Illinois residents. The local interest arising from Bitco's presence and contacts here renders this factor neutral at best. *See Azure Networks, LLC v. CSR PLC*, Civ. No. 6:11-CV-139, 2012 U.S. Dist. LEXIS 114497, at *15 (E.D. Tex. June 25, 2012).

Bitco makes the unsupported assertion that its disproportionately large revenue base in Texas "creates no Texas-specific interest in the case." Dkt. No. 34 at 14–15. But such a large revenue stream is fed, at least in part, by the premiums collected from residents of this District. Accordingly, as discussed above, residents of this district have a direct interest in the adjudication of this dispute. Additionally, the substantial insurance revenues collected in Texas further confirm the concentration of potential witnesses—employees, customers, and agents— located in Texas and this District. Thus, Bitco's Texas revenues are in fact an important factor weighing against transfer, relating both to public and private interest factors.

Finally, Bitco concedes that the other public interest factors are neutral in this analysis. *See* Dkt. No. 34 at 15. Thus, the weight of the public interest factors counsel against transfer.

## V.    CONCLUSION

For the foregoing reasons, Intellectual Ventures respectfully requests that this Court deny Bitco's Amended Motion to Transfer Venue. A Proposed Order is attached.

Respectfully submitted,

DEREK GILLILAND
STATE BAR NO. 24007239

EDWARD CHIN
STATE BAR NO. 50511688
KIRK VOSS
STATE BAR NO. 24075229
WINN CUTLER
STATE BAR NO. 24084364
CHRISTIAN J. HURT
STATE BAR NO. 24059987
ROSS LEONOUDAKIS
STATE BAR NO. 24087915
**NIX PATTERSON & ROACH, L.L.P.**
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
dgilliland@nixlawfirm.com
edchin@me.com
kirkvoss@me.com
winncutler@nixlawfirm.com
christianhurt@nixlawfirm.com
rossl@nixlawfirm.com

BEN KING
STATE BAR NO. 24048592
**NIX PATTERSON & ROACH, L.L.P.**
2900 St. Michael Drive, Suite 500
Texarkana, Texas 75503
903.223.3999 (telephone)
903.223.8520 (facsimile)
benking@nixlawfirm.com

**ATTORNEYS FOR PLAINTIFF
INTELLECTUAL VENTURES II LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service on this the 18th day of May, 2015.

**NIX PATTERSON & ROACH, L.L.P.**